**NOT FOR PUBLICATION**                                                      **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :
                                     :
BRUCE J. MYER, JR,                   :
                                     :
        Plaintiff,                   :          Civil Action No. 09-1716 (JAP)
                                     :
                v.                   :          **OPINION**
                                     :
SPECTRA GASES, INC., *et al*,        :
                                     :
        Defendants.                  :
_____ :

PISANO, District Judge.

This matter comes before the Court upon the motion of Defendants Spectra Gases Inc. ("Spectra"), Alvin Dietz, Andy Dietz, John Ballard ("Ballard"), Brian Bogusz ("Bogusz"), Susan Stellingwerf ("Stellingwerf"), Rob Robinson ("Robinson"), and Stryker Heating Cooling and Electric Inc. ("Stryker Inc.") (collectively "Defendants") to dismiss *pro se* Plaintiff, Bruce Myer's ("Myer"), Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons discussed below, Defendants' Motion to Dismiss is granted.

## I.      BACKGROUND[1]

Myer, who is 41 years of age, was a maintenance technician at Spectra from about January 10, 2007 until his termination on May 5, 2008.  Myer claims that he was terminated because he reported several safety concerns and because he appeared to be sleeping on the job after he was electrically shocked.

During the course of his employment at Spectra, Myer complained about workplace hazards on several occasions.  In September 2007, Myer informed Ken Stryker, from Stryker Inc., that the equipment Stryker was installing could leak highly poisonous and corrosive gases.  Myer then informed Bogusz, Maintenance Manager for Spectra, about his concerns.  Shortly thereafter, on September 28, 2007, Myer asked Ballard, the Vice President of Operations for Spectra, Bogusz, and Robinson, a Safety Officer employed by Spectra, to have a mechanical engineer who was experienced with exhausting and ventilating toxic gases inspect the installed equipment.  According to Myer, they callously disregarded his request when they responded "What exactly is wrong with this project?  Show us."  (Am. Compl. Count IV ¶ 6.)

Around October 10, 2007, Myer wrote a report detailing, what he claimed were, 32 different violations of the Occupational Safety and Health Administration ("OSHA") regulations including an incident where Myer purportedly witnessed Spectra employees sawing through the roof of a

---

[1]In an Order dated June 29, 2009, Myer was given leave to amend his Complaint by July 14, 2009 (docket entry # 19).  Although Plaintiff still has not filed his Amended Complaint with the Court, the Court construes the attachment (docket entry # 12-2) to his May 22, 2009 Motion to Amend as his amendment.  This attachment includes Counts IV and V, and adds Defendants Spectra, Alvin Dietz, Andy Dietz, and Stryker Inc.  For the purposes of this Opinion, the term "Amended Complaint" is comprised of Myer's initial Complaint included in the Notice of Removal filed on April 9, 2009 and the amendment attached to the May 22, 2009 Motion to Amend.  The facts are therefore drawn from the Amended Complaint.

building without inquiring about the presence of asbestos.  The following day, Myer was called into a meeting with Bogusz, Ballard, Robinson, and several other people to discuss his report.  It was ultimately concluded that not all of the issues raised in Myer's report were applicable to the project. Myer claims that from that day forward, he was constantly harassed by Bogusz, Ballard, Robinson, and Stellingwerf, and that his job was threatened.  After a gas explosion on October 18, 2007, Myer drafted a letter dated November 5, 2007 to Bogusz warning him of additional code violations and received, what he deemed, an inadequate response.  Finally, on March 15, 2008, Myer alleges that he was denied a copy of a report specifying the location of asbestos in three of the Spectra facilities. He claims that Ballard threatened his job for requesting the report.

On May 3, 2008, Myer was suspended for two days for allegedly sleeping on the job. However, he asserts that he was not sleeping but that he unconscious due to an electrical shock he received while servicing a heating unit.  He further claims that instead of seeking immediate medical attention when they discovered him, Bogusz and Robinson left to retrieve a digital camera.  Myer asserts that he was suspended without an investigation.  Finally on May 5, 2008, Stellingwerf and Bogusz fired him over the phone.

On March 6, 2009, Myer filed a three-count Complaint against Ballard, Bogusz, Stellingwerf and Robinson, in the Superior Court of New Jersey, Law Division.  In the Complaint he asserts one count of Tortious Interference with Employment, one count of a violation of the New Jersey Conscientious Employee Protection Act ("CEPA") and one count of a violation of the Age Discrimination in Employment Act ("ADEA").  Defendants removed the case to the United States District Court, District of New Jersey on April 9, 2009.  Defendants Moved to Dismiss the Complaint on April 28, 2009 and Myer Moved to Amend the Complaint on May 22, 2009.  He was

3

granted leave to amend in an Order dated June 29, 2009 and added Defendants Spectra, Stryker Inc. and Alvin and Andy Deitz.  Additionally, he included Counts IV and V which allege additional violations of CEPA and the ADEA.  Defendants accepted service of the Amended Complaint on July 14, 2009.  (*See* Defs.' Ltr. Dated July 23, 2009 at p. 3.)   Defendants renewed their Motion to Dismiss the Amended Complaint on July 23, 2009.

## II.    DISCUSSION

### A.    Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  Refashioning the appropriate standard, the United States Supreme Court found that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ."  *Twombly*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

B.  **Legal Analysis**

i.  *Count I: Tortious Interference with Employment*

Myer's claim for tortious interference with employment is fatally flawed.  To maintain a cause of action for tortious interference with employment, a plaintiff must establish the following five elements (1) the plaintiff had an "existing or reasonable expectation of economic benefit or advantage;" (2) the defendant "had knowledge of that expectancy;" (3) the defendant "wrongfully and intentionally interfered with that expectancy;" (4) there is a reasonable probability that the plaintiff "would have received the anticipated economic benefit in the absence of interference;" and (5) the plaintiff sustained damages as a result of the defendant's interference.  *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993).  In New Jersey, "it is 'fundamental' to a cause of action for tortious interference with a prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Marrero v. Camden County Bd. of Social Services*, 164 F. Supp. 2d 455, 478 (D.N.J. 2001) (quoting *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 752 (1989)).  As such, an employee who works for the company with which the plaintiff held a contract cannot serve as a necessary third-party unless the employee acted outside of the scope of his employment.  *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997); *see also Obendorfer v. Gitano Group, Inc.*, 838 F. Supp. 950, 956 (D.N.J. 1993).

Here, Myer asserts his tortious interference claim against his co-workers who are not third parties.  Moreover, he does not allege any facts suggesting that they acted outside of the scope of their employment.  Even if the Court construes the Amended Complaint to assert this claim against Spectra, the claim still fails because Spectra, as Myer's former employer, was in a contractual relationship with him.  Similarly, to the extent the Amended Complaint is construed to assert a

5

tortious interference claim against Stryker Inc., a third party, Myer does not allege any facts implicating Stryker Inc.  For the reasons stated above, Count I of Myer's Amended Complaint is hereby dismissed.[2]

ii.      *Counts II and IV: CEPA Violations*

Myer's CEPA claims similarly fail.  CEPA is designed to protect employees who engage in a protected activity, such as disclosing or threatening to disclose to an authority an activity which the employee reasonably believes is in violation of the law, from suffering retaliatory action by the employer.[3]  *N.J.S.A.* § 34:19-3.  Retaliatory action is defined as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." *N.J.S.A.* § 34:19-2(e).  As such, the following elements must be satisfied to state a CEPA claim: (1) the plaintiff disclosed or threatened to disclose the activity to a supervisory authority; (2) the plaintiff suffered an adverse employment action; and (3) a causal connection exists between the two.  *Fioriglio v. City of Atlantic City*, 996 F. Supp. 379, 393 (D.N.J. 1998).

Myer asserts violations of CEPA in Counts II and  IV of the Amended Complaint.  In Count

---

[2]Myer claims that he raises an Equal Protection claim under Court I by inserting the following language: "Contrary to equal protection under law, a former employee Dwayne Itterly worked as a maintenance technician until or about June 2007.  During his employment he was found to be unconscious within common areas at Spectra gases without being suspended, nor was he terminated."  (Am. Compl. Count I ¶ 8), (Br. in Opp. to Def.'s Mot. to Dismiss, p. 5). However, this claim fails because Myer does not allege that he was treated differently than Dwayne Itterly because Myer is a member of a protected class.  Rather, he claims that he was treated differently because he was fired for being unconscious on the job whereas Itterly was not. As such, this claim is dismissed for failure to state a claim.

[3]As a threshold issue, to the extent Myer asserts a CEPA claim against Stryker Inc., this claim fails as a matter of law because Myer does not allege that he was employed by Stryker Inc.

II, Myer claims that Defendants violated CEPA by threatening him with termination if he did not stop expressing his opinion about safety conditions, by asking him a series of harassing questions, and by denying him a copy of a report specifying the location of asbestos.  Similarly, in Count IV Myer alleges that Defendants violated CEPA when they failed to discuss all of the potential OSHA violations in his report, that Defendants harassed him, and denied him a report documenting the location of asbestos.  Myer further claims that it was a violation of CEPA when he was suspended for what appeared to be sleeping on the job after he suffered from an electrical shock.

The Court finds that Myer cannot successfully sustain either CEPA claims.  First, in Count II, Myer alleges no retaliatory action.  Although Myer claims that he was harassed, he pled no facts suggesting that he was demoted, suspended or terminated because he expressed his opinions about safety conditions or because he requested a copy of the asbestos report.  *See Borawski v. Henderson*, 265 F. Supp. 2d 475, 487 (D.N.J. 2003) ("allegations of harassment are insufficient to state a claim of retaliatory action.")

Second, Myer's CEPA claim in Count IV fails because there is no causal connection between his suspension or termination and a protected activity.  Myer asserts that he was suspended and ultimately terminated for what appeared to be sleeping while on the job.  Although he maintains that he was unconscious due to an electrical shock, this does not constitute protected activity under CEPA.  However, even if the Court broadly construes Myer's Amended Complaint to allege that he was terminated for engaging in whistleblowing activities, his claim still fails because six months passed between November 2007, the date of his last letter, and his termination on May 5, 2008.  *See Young v. Hobart West Group*, 385 N.J. Super. 448, 467 (App. Div. 2005) (court found that plaintiff's termination four months after engaging in whistleblowing activity did not, without more facts,

suggest a causal link).  Accordingly, Counts II and IV are dismissed.

      *iii.*    *Counts III and V: ADEA Violations*

Myer's ADEA claims are dismissed because he failed to exhaust his administrative remedies prior to filing suit.  The Third Circuit requires dismissal of an ADEA complaint for failure to exhaust administrative remedies if the plaintiff does not file a charge with the Equal Employment Opportunity Commission ("EEOC") prior to initiating a civil action.  *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir. 2007).  Because Myer does not claim to have filed a charge with the EEOC, Counts III and V are dismissed.[4]

## III.  CONCLUSION

For the reasons expressed above, the Court grants Defendants' Motion to Dismiss the Amended Complaint.  An appropriate order accompanies this Opinion.

           /s/ Joel A. Pisano
           JOEL A. PISANO, U.S.D.J.

Dated: August 18th, 2009

---

[4]Additionally, a plaintiff cannot sue an individual under the ADEA.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 246 n.29 (3d Cir. 2006).  As such, to the extent Myer asserts violations of the ADEA against the individual defendants, these claims fail.

8